UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

STEPHANIE M. JACOBS,

       Plaintiff,

v.

       Case No: 26-CV-647

       JURY TRIAL DEMANDED

CHARTER COMMUNICATIONS, INC.,
d/b/a SPECTRUM

       Defendant.

## COMPLAINT

Plaintiff Stephanie M. Jacobs, by and through undersigned counsel, alleges as follows.

### NATURE OF THE CASE

This is an action for disability discrimination under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101,et seq. ("ADA"). Defendant offered Plaintiff employment as a Customer Service Representative. Before and during the hiring and onboarding process, Plaintiff informed Defendant that she had profound hearing loss, wore hearing aids, and needed reasonable accommodations in order to perform the job. Defendant repeatedly represented that accommodation would not be a problem, moved Plaintiff through the hiring process, extended her an offer, and had her complete onboarding paperwork. Defendant then delayed Plaintiff's start date for weeks while purportedly evaluating accommodation

options, failed to provide effective accommodation, suggested Plaintiff purchase different hearing aids at her own expense, told Plaintiff she could reapply if her "hearing aid situation changes," and ultimately rescinded the offer. Defendant thereby failed to reasonably accommodate Plaintiff and discriminated against Plaintiff because of her disability and/or because she requested accommodation.

## JURISDICTION AND VENUE

1. This action arises under the ADA, 42 U.S.C. § 12101 et seq.

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

3. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving tie to these claims occurred in this District, including in or around Appleton, Wisconsin.

4. Venue is also proper because Plaintiff resides in Kaukauna, Wisconsin, and the position at issue was located in this District.

## PARTIES

5. Plaintiff Stephanie M. Jacobs is an adult individual residing in Kaukauna, Wisconsin.

6. Plaintiff has no hearing in her right ear and severe or moderate-to severe hearing loss in her left ear.

7. Plaintiff wears hearing aids daily.

8. Plaintiff's hearing impairment substantially limits one or more major life activities, including hearing and communicating.

9. Defendant Charter Communications, Inc., d/b/a Spectrum and/or the related Spectrum entity that offered Plaintiff employment, is an employer within the meaning of the ADA.

10. At all relevant times, Defendant did business in Wisconsin, including through operations in or near Appleton, Wisconsin.

**ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT**

11. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 443-2023-00548.

12. The charge alleged that Defendant discriminated against Plaintiff on the basis of disability by failing to provide reasonable accommodation and rescinding her employment offer.

13. On December 3, 2025, EEOC issued a determination finding reasonable cause to believe Defendant denied Plaintiff a reasonable accommodation and rescinded her employment offer on the basis of disability, in violation of the ADA.

14. The EEOC thereafter attempted conciliation.

15. Conciliation was unsuccessful.

16. On January 16, 2026 the EEOC issued Plaintiff a Notice of Right to Sue following conciliation failure.

17. This action is filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

18. All conditions precedent to suit have been satisfied, waived, or excused.

## FACTUAL BACKGROUND

19. On or about July 12, 2022, Defendant invited Plaintiff to apply for a Customer Service Representative position paying $20 per hour.

20. On July 14, 2022, Plaintiff participated in a phone interview with recruiter Robyn Plaisance.

21. During that interview, Plaintiff informed Defendant that she had no hearing in her right ear, severe hearing loss in her left ear, wore two hearing aids daily, and would need assistive technology in order to perform the position.

22. Plaintiff further disclosed that she would need accommodation related to her hearing in order to do her job.

23. Defendant told Plaintiff that hearing technology would be "no problem" and that Defendant had others working at Spectrum with hearing aids.

24. Defendant moved Plaintiff forward in the interview process.

25. On July 20, 2022, Plaintiff participated in an in-person interview with Cindy Rahn.

26. During that interview, Plaintiff again explained that she would need a phone that could connect directly to her hearing aids and would need closed captioning.

27. Plaintiff was again told that accommodation would be "no problem."

28. Defendant recommended Plaintiff for hire.

29. On July 20, 2022, Defendant went through hiring paperwork with Plaintiff, gave her materials explaining how to access her offer letter and onboarding tasks, and advised that orientation would begin on August 8, 2022.

30. Defendant also provided schedule information for orientation and work after orientation.

31. Plaintiff asked about dress code and purchased clothing for her new job.

32. On July 20, 2022, Plaintiff received access to Defendant's system and obtained the offer letter there.

33. By July 24, 2022, Plaintiff had completed onboarding materials, including tax forms, an arbitration agreement, benefit-related selections, and an identification photo.

34. On July 26, 2022, Defendant advised Plaintiff that HR representative Nicole Roberts would be the person handling Plaintiff's assistive technology.

35. On July 29, 2022, Defendant informed Plaintiff that she could not start her position until assistive technology was in place.

36. On or about July 29,2022, Plaintiff completed accommodation paperwork for Defendant.

37. In that paperwork, Plaintiff explained that she had nerve damage resulting in basically total hearing loss in her right ear and moderate-to-severe hearing loss in her left ear.

38. Plaintiff also explained that she had slower auditory processing and that closed captioning would help immensely.

39. Plaintiff further explained that she needed a phone or headset that could route calls directly into her hearing aids and might need noise-canceling on the right side.

40. Plaintiff signed releases so Defendant could speak with her audiologist, Danica Noskey, and physician.

41. Plaintiff also notified those providers that Defendant would be requesting time-sensitive paperwork.

42. By August 1, 2022, Plaintiff's audiologist had completed and submitted the requested paperwork.

43. On August 4, 2022, Plaintiff attended Defendant's "Meet Your Leaders" event.

44. At that event, Plaintiff told Defendant she was looking forward to starting her job, hoped her start date could still be August 8, and asked whether Defendant needed anything further from her to expedite the assistive-technology process.

45. Defendant told Plaintiff it would keep her informed the following week.

46. Defendant did not permit Plaintiff to begin work on August 8, 2022.

47. On August 5, 2022, Plaintiff's audiologist spoke to Defendant's HR representative about the assistive technology needed for Defendant's phones to work with Plaintiff's hearing aids.

48. On August 12, 2022, Plaintiff emailed Defendant to request an update and asked whether she would be able to start with the training class on August 22, 2022.

49. On August 16, 2022, Defendant responded that it had no updates and was working with its corporate team to see what it might be able to do.

50.     On August 16, 2022, Plaintiff again asked whether her start date would be August 22 or sometime in September so that she could plan accordingly.

51.     Defendant then responded that IT had a call with Defendant's phone vendor but had not received additional information, and that it did not appear Plaintiff would be able to start in the August 22 class.

52.     On August 18, 2022, Plaintiff's audiologist contacted Defendant and offered the Easy Tek device Plaintiff would need for the job at a discounted rate.

53.     Plaintiff's audiologist also advised Defendant that caption-call software and installation at Plaintiff's workstation would be free.

54.     On August 19, 2022, Defendant told Plaintiff it was still working through the process and that Plaintiff would not be able to start on Monday.

55.     Plaintiff asked whether there was anything she could to expedite the process.

56.     Defendant responded there was not.

57.     On August 31, 2022, Defendant told Plaintiff it was continuing to work with its ADA team and vendors to review options to the accommodation Plaintiff requested.

58.     On September 1, 2022, Plaintiff asked whether she could get started on tasks that did not require accommodation while the reasonable accommodation process remained delayed.

59.     Plaintiff reiterated that she was eager to begin work, that she had been excited and hopeful to begin on the August 8 hire date, and that waiting without pay was creating a financial hardship.

60. Plaintiff also referenced the solution identified by her audiologist and asked whether Defendant could purchase the Easy Tek device described by the audiologist.

61. Defendant did not permit Plaintiff to start on other tasks and did not provide the requested accommodation.

62. On September 8, 2022, Plaintiff again emailed Defendant regarding the reasonable accommodations, and in an effort to engage in the interactive process, requested a response to her prior email.

63. On September 9, 2022, Defendant spoke with Plaintiff and stated that it was working with Corporate IT and phone systems.

64. During that communication, Defendant asked Plaintiff whether she could buy Bluetooth-compatible hearing aids.

65. Defendant further stated that, with what it had in the call center, there might not be a solution that worked with Plaintiff's hearing aids.

66. Plaintiff explained that she could not afford approximately $4,000 hearing aids.

67. Defendant did not offer to provide the proposed hearing aids that it alleged were compatible with its systems to Plaintiff.

68. Defendant gave Plaintiff no start date and did not provide other work in the meantime.

69. On September 15, 2022, Defendant told Plaintiff it had no changes to share regarding the process.

70. On September 22, 2022, Defendant again stated that it continued to work through accommodation process to find equipment that might fit Plaintiff's needs.

71. On September 22, 2022, Defendant had another background check sent because approximately 60 days had passed and Plaintiff' still had not started work.

72. On September 23, 2022, Defendant's representative told Plaintiff that Defendant had exhausted all accommodations.

73. Defendant stated it could not get a caption phone.

74. Defendant told Plaintiff that if her "hearing situation changes" she could reapply.

75. Defendant also suggested that Plaintiff apply for retail positions instead of the customer service position for which she had already been hired.

76. Plaintiff asked whether Defendant would make accommodations for the job it hired her for, and Defendant did not provide an accommodation.

77. Defendant told Plaintiff that it had looked at caption phones like the solution Plaintiff's audiologist had offered, that its vendor said they were not compatible, and that if Plaintiff purchased new hearing aids she could reapply and Defendant would then work with her.

78. Defendant did not describe any undue hardship or burden to Plaintiff for any of her proposed accommodations and failed to provide any alternative accommodation options for Plaintiff.

79. On October 7, 2022, Defendant sent an automated email confirming that Plaintiff's employment offer for the Customer Service Representative position had been rescinded.

80. At all relevant times, Plaintiff was ready, willing, and able to begin work.

81. Plaintiff successfully completed the interview process, was recommended for hire, received an offer, and completed onboarding.

82. Plaintiff could perform the essential functions of the Customer Service Representative position with reasonable accommodation, including direct phone compatibility with her hearing aids and closed captioning or caption-call functionality.

83. Plaintiff fully cooperated in the interactive process by disclosing her disability, requesting accommodation, completing paperwork, signing releases, communication with HR, and facilitating communication with her audiologist.

84. Defendant failed to provide reasonable accommodation within a reasonable time.

85. Defendant instead delayed Plaintiff's start date for weeks, shifted the burden of accommodation to Plaintiff by suggesting she purchase different hearing aids, and then rescinded the offer.

86. Defendant's actions were taken because of Plaintiff's disability and/or because she requested accommodation.

87. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, lost employment benefits, emotional distress, inconvenience, humiliation, and other damages.

## COUNT I
### (Failure to Accommodate in Violation of the ADA)

88. Plaintiff realleges and incorporates the above paragraphs by reference.

1. Defendant has engaged in employment practices that violate the ADA, 42 U.S.C. § 12101 *et seq.*

89. At all times relevant, Plaintiff was a qualified individual with a disability within the meaning of the ADA. 42 U.S.C. § 12111(8).

90. Plaintiff's hearing impairment substantially limits major life activities, including hearing and communicating and qualifies as a disability under 42 U.S.C. § 12102(1)(A).

91. Defendant knew of Plaintiff's disability and need for accommodation no later than July 14, 2022, and repeatedly received further notice thereafter.

92. Plaintiff was qualified to perform the essential functions of the Customer Service Representative position with reasonable accommodation.

93. Plaintiff requested reasonable accommodation, including phone or headset compatibility routing calls directly to her hearing aids and closed captioning or caption-call functionality.

94. Plaintiff cooperated in good faith in the interactive process.

95. Effective accommodation options were identified or proposed during the onboarding period, including captioning-related solutions and equipment compatible with Plaintiff's hearing aids.

96. Defendant failed to engage in the interactive process in good faith.

97. Instead of accommodation Plaintiff, Defendant delayed her start, refused to allow her to begin work, suggested she purchase different hearing aids at her own expense, and denied her the opportunity to work in the position offered.

2. Defendant failed to provide a reasonable accommodation in violation of 42 U.S.C. § 12112(b)(5)(A).

98. As a direct and proximate result of Defendant's conduct in violation of the ADA, Plaintiff suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

99. Defendant's unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of ADA, was outrageous and malicious, was intended to injure Plaintiff, and was committed with the conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**COUNT II**
**(Disability Discrimination in Violation of the ADA)**

100. Plaintiff realleges and incorporates the above paragraphs by reference.

101. Plaintiff had an actual disability within the meaning of the ADA.

102. In addition, Defendant regarded Plaintiff as having an impairment affecting her ability to perform the Customer Service Representative role.

103. Plaintiff was qualified for the position, with or without reasonable accommodation.

104. Defendant subjected Plaintiff to adverse employment actions, including delaying her start date, refusing to place her into the job for which she had been hired, and rescinding the employment offer.

105. Defendant expressly tied its decision to Plaintiff's hearing-related limitations and accommodation needs, including by stating there might not be a solution that worked with Plaintiff's hearing aids and by telling Plaintiff she could reapply if her "hearing aid situation changes."

106. Defendant also suggested Plaintiff apply for another job instead of employing her in the position for which she had already been hired.

107. Plaintiff's disability and/or request for accommodation was a motivating factor in Defendant's adverse actions.

108. Defendant's conduct violated the ADA.

109. As a direct and proximate result of Defendant's conduct in violation of the ADA, Plaintiff suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

110. Defendant's unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of ADA, was outrageous and malicious, was intended to injure Plaintiff, and was committed with the conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT III

## (Retaliation in Violation of the ADA)

111. Plaintiff realleges and incorporates the above paragraphs by reference.

112. Plaintiff engaged in protected activity when she repeatedly requested reasonable accommodations for her disability.

113. Defendant retaliated against Plaintiff by terminating her because she engaged in protected activity, in violation of 42 U.S.C. § 12112(a).

114. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

115. As a direct and proximate result of Defendant's unlawful discriminatory and harassing conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including but not limited depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

116. Defendant's unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of ADA, was outrageous and malicious, was intended to injure Plaintiff, and was committed with the conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgement in her favor and against Defendant, and award the following relief:

(1) An Order finding that Defendant violated the ADA;

(2) An Order directing Defendant to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

(3) An Order directing Defendant to make Plaintiff whole by providing compensatory damages to compensate him for past and future non-pecuniary losses including, but not limited to, emotional pain, suffering, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, inconvenience, and mental anguish resulting from the unlawful practices complained of in the foregoing paragraphs in amounts to be determined at trial;

(4) An award of punitive damages;

(5) Costs and reasonable attorney's fees in amounts to be determined by the Court in accordance with 42 U.S.C. § 12101, *et. seq.* and;

(6) Such other further legal and equitable relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 15th, 2026.

Respectfully submitted,


*s/ Summer H. Murshid*
Summer H. Murshid SBN 1075404
Christine A. Donahoe SBN 1092282
Connor J. Clegg SBN 1118534
*Attorneys for Plaintiff*

**Hawks Quindel, S.C.**
5150 N. Port Washington Road
Suite 243
Milwaukee, WI 53217
Telephone: (414) 271-8650
Fax: (414) 207-6079
Email(s):   smurshid@hq-law.com
            cdonahoe@hq-law.com
            cclegg@hq-law.com